**THOMPSON COBURN LLP**
**HELEN B. KIM, CSB 138209**
hkim@thompsoncoburn.com
2029 Century Park East, 19th Floor
Los Angeles, California 90067
Tel: 310.282.2500 / Fax: 310.282.2501

Attorneys for Plaintiff
FEDERICO POLAK

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FEDERICO POLAK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PERFORM MEDIA INC., a New York corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 2:19-cv-01675<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT;**<br>2. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>3. **WRONGFUL TERMINATION; AND**<br>4. **UNFAIR BUSINESS PRACTICES, BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

7261460

COMPLAINT

FEDERICO POLAK ("Plaintiff"), a citizen of Argentina, by and through his attorneys, THOMPSON COBURN LLP, alleges the following against PERFORM MEDIA INC., a New York Corporation ("Defendant" or "Perform"):

## INTRODUCTION

1. This is an action for breach of contract, breach of the implied-in-law covenant of good faith and fair dealing, and wrongful termination. As set forth below, Defendant materially breached the terms of Plaintiff's employment contracts by depriving Plaintiff of receiving the actual benefits and the opportunity to receive the actual benefits of those contracts with Defendant, which he was entitled to receive, with malice, oppression and fraudulent representations causing Plaintiff not only monetary damages, but also loss of property and income, and other damages in an amount not less than $3,314,225.00.

## PARTIES

2. Plaintiff is, and at all times relevant herein was, a citizen of Argentina.

3. Plaintiff is informed and believes and, based upon such information and belief, alleges that Perform is, and at all times relevant herein was, a corporation formed and existing under the laws of the State of New York, and authorized to do business in the State of California, with its principal place of business located at 470 Park Avenue South, New York, New York 10016.

4. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant at all times relevant herein acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity and the amount in controversy, on information and belief, exceeds $75,000.

6. This Court has personal jurisdiction over this action pursuant to Federal

Rules of Civil Procedure, Rule 4(k) and California Code of Civil Procedure § 410.10.

7. Venue is appropriate in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2). Venue is also appropriate in the Central District of California because the relevant arbitration provision is incapable of being performed pursuant to Article 1651 of Argentina's Civil and Commercial Code, which prohibits labor and employment disputes from being arbitrated.

## FACTUAL ALLEGATIONS

8. Plaintiff was an outstanding employee for Defendant from in or about July 2012 until his wrongful termination on or about December 11, 2018.

9. Plaintiff's employment track record speaks for itself: he began as the General Manager of Argentina, but was quickly promoted to the position of General Manager of Latin America after less than two months. In 2015, Plaintiff was appointed the Managing Director for Latin America, the Caribbean, and Brazil as evidenced by the Employment Contract entered into between the parties on or about September 30, 2015 (the "2015 Contract").

10. Plaintiff's commitment to and performance for Defendant was nothing short of exemplary for over six years. For example, when the FIFA-GATE scandal arose in 2015, and Defendant's accounts were frozen in Latin America due to their joint venture with an entity associated with FIFA-GATE (the "FIFA-GATE entity"), Plaintiff personally paid not only the journalists on their way to cover Copa America 2015 (an international South American soccer tournament) but also paid the entire salaries of each of Defendant's employees under payroll at that time based in the Argentina office out of his own pocket.

11. During his tenure, Plaintiff successfully positioned Defendant as the regional leader in the area of "Betting rights, Stats, Rights".

12. Moreover, in 2017, Plaintiff played an integral role in securing the South American Football Confederation ("CONMEBOL") tender for the amount of $1.5 billion dollars. Following the CONMEBOL tender, several published articles linked

Plaintiff with the FIFA-GATE entity. Despite his undivided loyalty to Defendant, Plaintiff received no public support from Defendant, whose sole response was issuing a statement explaining that it had previously worked with the FIFA-GATE entity and ended its business relationship when the scandal arose. Defendant never issued any public support to protect Plaintiff's integrity, which to this day hinders Plaintiff's ability to secure other employment.

13. Later in 2017, Plaintiff was one of two final candidates for the position of Chief Commercial Officer, but Plaintiff eventually recommended that the other candidate be given the position because it would have required Plaintiff to relocate from Argentina to London, England.

14. In April 2018, Plaintiff had a conversation with Simon Denyer, Defendant's founder and Chief Executive Officer, in which they discussed Plaintiff relocating to a position outside of Argentina and Mr. Denyer stated: "Anywhere in the world you want to go, we have your back, you have done so much for us." This led to Defendant's offer to Plaintiff of the position of Vice President, Program Development of Perform based in Los Angeles, California.

15. After this initial offer in April 2018 and in anticipation of relocating to Los Angeles, Plaintiff began delegating local functions and working on United States-based content projects, documentaries, strategies etc. Plaintiff was not permitted to immediately assume the position in Los Angeles, but continued to receive from Defendant varying relocation packages indicating that he would be moving in the near future. Further, Plaintiff had to use his own accrued flight miles and funds on a trip to the United States to secure business for Defendant as Plaintiff's line manager would not approve the trip request. In reliance on Defendant's continued representations that Defendant would relocate Plaintiff to Los Angeles as Perform's VP, Program Development, Plaintiff sold his house in Argentina and liquidated his assets in Argentina.

16. After months of delay, Plaintiff finally received a written employment

offer on October 23, 2018 (the "2018 Contract"). The 2018 Contract specified, *inter alia*, that it would become "effective **upon** [Plaintiff] **successfully obtaining a visa**" and that Defendant would cover all costs associated with obtaining L-1A status and support Plaintiff's application for L-1A status., which would have authorized Plaintiff to live and work for Perform in the United States.  Upon information and belief, Defendant had an approved L Blanket Petition which enabled Defendant to transfer qualifying executives and managers from its offices abroad to the United States, and Defendant filed a Form I-129S (Nonimmigrant Petition Based on L Blanket Petition) requesting to sponsor Plaintiff for L-1A status in the United States.

17. Defendant hired a law firm ("Fragomen") to handle Plaintiff's L-1A status paperwork.  Defendant paid for all of Fragomen's services related to securing Plaintiff L-1A status and identified itself as a sponsor of Plaintiff's application to obtain L-1A status.  Defendant's L-1A sponsorship of Plaintiff was a requisite component of Plaintiff successfully obtaining L-1A status.  Fragomen informed Plaintiff before he received the 2018 Contract that his L-1A status interview at the United States Embassy in Argentina would take place soon after October 15, 2018.

18. However, this promised L-1A status interview never took place in October 2018, despite Plaintiff's diligence in requesting updates.  When Plaintiff inquired why the interview had not taken place as originally planned, Fragomen explained that Defendant had misfiled some paperwork and that the issue would be resolved in the upcoming weeks.

19. Notwithstanding this delay, Plaintiff requested permission from Defendant to move to Los Angeles before his L-1A status paperwork was finalized so that he could begin searching for housing, and take on additional California-based projects.  Defendant approved Plaintiff's request, provided that the move to Los Angeles was authorized by Grant Best, Senior Vice President, Original Programming and Content Development, to whom Plaintiff would report in his new capacity as Vice President.

20. Mr. Best, however, refused to approve Plaintiff's request. Thus, Plaintiff was forced to continue to incur additional living expenses by renting a short-term residence in Argentina (as he had already sold his primary residence based on the promise of relocation months earlier) as he awaited the rescheduling of his L-1A status interview.

21. In early December 2018, Defendant instructed Plaintiff to sign additional L-1A status paperwork and to relinquish his roles in the local Argentina projects with which he was still involved because he would soon be relocating to Los Angeles. In reliance upon Defendant's instructions and their promise to proceed with the necessary requirements for Plaintiff to obtain his L-1A status, he did so.

22. Thereafter, Plaintiff was informed by Fragomen that his L-1A status interview was scheduled for December 14, 2018, at the United States Embassy in Argentina.

23. During this period of time, Plaintiff inquired several times about the bonuses he had earned under the 2015 Contract and Defendant reassured him that they would be paid as part of his relocation and that those bonuses were *guaranteed*.

24. On or about November 27, 2018, Juan Delgado, the current Chief Executive Officer of Defendant's Americas operations, emailed Plaintiff to set up a time to "chat" on December 12, 2018, two days before Plaintiff's scheduled L-1A status interview. Plaintiff agreed, as Mr. Delgado was his counterpart in Plaintiff's long-term incentive plan and their last conversation had been about Plaintiff's excellent work and his hitting all of his goal numbers under the long-term incentive plan.

25. On or about December 4, 2018, Plaintiff received an email from Fragomen confirming December 14, 2018, as the date for Plaintiff's L-1A status interview, containing all the proper L-1A status paperwork, and scheduling a meeting to prepare for the L-1A status interview.

26. On or about December 11, 2018, however, when Plaintiff met Mr.

Delgado for the requested "chat," Mr. Delgado informed Plaintiff that his employment was being terminated effective immediately without cause—just three days before Plaintiffs' L-1A status interview scheduled for December 14, 2018. At that meeting, Mr. Delgado informed Plaintiff that he would receive a severance for less than the amount of guaranteed bonuses he was owed and that Defendant would no longer be paying for Fragomen's services nor sponsoring Plaintiff in his bid for L-1A status. Plaintiff was also instructed to attend a meeting at the offices of Defendant's attorneys to discuss the severance and sign all the necessary paperwork the following day, December 12, 2018, at 10 a.m. Plaintiff attended the December 12, 2018 meeting because Mr. Delgado described the meeting as a "settlement conversation", which Plaintiff understood to be a mediation. Plaintiff also wanted Defendant to enable his L-1A status interview to proceed and to continue sponsoring Plaintiff's L-1A status application.

27. Upon information and belief, when Defendant withdrew its sponsorship of Plaintiff for L-1A status, Defendant effectively terminated Plaintiff's ability to obtain the L-1A work visa necessary for Plaintiff to work as an executive of Perform in the United States.

28. No settlement agreement was reached at the mediation on December 12, 2018, nor has there been any agreement between Plaintiff and Defendant since as Mr. Delgado only attended the mediation for a very brief period of time and did not engage in any substantive settlement discussions with Plaintiff. Following the unsuccessful mediation on December 12, 2018, Defendant represented that it would send Plaintiff a settlement agreement within the week, and subsequently stated that there would be one before the end of the year. Defendant never sent Plaintiff any settlement agreement.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

29. Plaintiff realleges, and by this reference incorporates herein, paragraphs 1 through 28 of this Complaint as though fully set forth.

30. Plaintiff entered into the 2015 Contract with Defendant as alleged above.

31. Pursuant to section 2 of the 2015 Contact, Plaintiff was not an at-will employee but rather had the promise of continued employment.

32. Pursuant to sections 7 and 10 of the 2015 Contract, Defendant was required to pay Plaintiff all agreed upon allowances and to reimburse Plaintiff for all reasonable business expenses incurred in the course of his employment including business travel and telephone and accommodation expenses, which Defendant failed to do.

33. Pursuant to section 19 of the 2015 Contract, Plaintiff's employment could only be terminated without cause upon three months' notice to Plaintiff or payment to Plaintiff, in lieu of notice. Defendant provided neither three months' notice to Plaintiff of termination of the 2015 Contract nor payment of three months' salary in lieu of three months' notice at the time of his termination as required by Section 19 of the 2015 Contract. Additionally, Defendant had an obligation to pay Plaintiff all bonuses and wages he had earned under the 2015 Contract at the time of his termination but similarly failed to do so.

34. Plaintiff has performed all covenants, conditions, duties and obligations that were under his control and required to be performed by him under the 2015 Contract, except as excused by Defendant's breaches of the 2015 Contract.

35. Plaintiff also entered into the 2018 Contract with Defendant as alleged above.

36. The 2018 Contract was contingent upon Plaintiff successfully obtaining a visa (i.e. L-1A status).

37. However, Defendant intentionally prevented Plaintiff from obtaining L-1A status by first delaying, and ultimately withdrawing, its sponsorship of Plaintiff for L-1A status—which effectively terminated Plaintiff's ability to obtain L-1A status—and by terminating his employment without cause, in violation of the terms of the 2015 Contract, just three days prior to his scheduled L-1A status interview. Defendant withdrew its sponsorship of Plaintiff for L-1A status and terminated his employment without cause, without the requisite three months' notice to Plaintiff required by the 2015 Contract, in breach of Defendant's contractual obligations to Plaintiff, including, without limitation, Defendant's obligation to pay Plaintiff three months' salary in lieu of providing three months' notice of his termination and to pay Plaintiff all bonuses and wages to which he was entitled, in breach of the terms of the 2015 Contract and the 2018 Contract.

38. Plaintiff has performed all covenants, conditions, duties and obligations that were under his control and required to be performed by him under the 2018 Contract, except as excused and/or prevented by Defendant's breaches of the 2018 Contract.

39. By its actions, Defendant has frustrated the purpose of the 2018 Contract and thereby breached the terms of the 2018 Contract.

40. In sum, Defendant has committed numerous breaches of both the 2015 Contract and the 2018 Contract.

41. As an actual and proximate result of Defendant's breaches of the 2015 Contract and the 2018 Contract, Plaintiff has been damaged in an amount not less than $3,314,225.00.

## SECOND CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing )**

42. Plaintiff realleges, and by this reference incorporates herein, paragraphs 1 through 41 of this Complaint as though fully set forth.

43. The contracts between Plaintiff and Defendant contained an implied-in-law covenant of good faith and fair dealing that no party would do anything to injure the right of another party to enjoy the actual benefits of those contracts.

44. The 2018 Contract required Plaintiff to obtain a visa (i.e. L-1A status) as a condition precedent of that agreement.

45. Defendant intentionally prevented Plaintiff from obtaining L-1A status by first delaying the L-1A status application process and ultimately withdrawing its sponsorship of Plaintiff for L-1A status—which effectively terminated Plaintiff's ability to obtain L-1A status—in order to avoid its contractual obligations to Plaintiff, including, without limitation, its obligation to pay Plaintiff bonuses and wages to which he was entitled under the 2015 Contract, in violation of both the 2015 Contract and the 2018 Contract. In doing so, Defendant deprived Plaintiff of receiving the actual benefits, and the opportunity to receive the actual benefits of, his contracts with Defendant, which he was entitled to receive.

46. As an actual and proximate result of Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount not less than $3,314,225.00.

## THIRD CAUSE OF ACTION

**(Wrongful Termination in Violation of Public Policy)**

47. Plaintiff realleges, and by this reference incorporates herein, paragraphs 1 through 46 of this Complaint as though fully set forth.

48. It is public policy of the State of California to prohibit employers from discharging employees in order to avoid paying bonuses and wages to the discharged employee and to engage in "wage theft" under California Labor Code § 216.

49. As set forth above, Defendant intentionally prevented Plaintiff from obtaining L-1A status by significantly delaying/frustrating his relocation process and terminating his employment without cause three days prior to his scheduled L-1A

status interview in order to avoid its contractual obligations to Plaintiff, including, without limitation, to pay Plaintiff bonuses and wages to which he was entitled.

50. As an actual and proximate result of Defendant's wrongful termination of Plaintiff's employment, Plaintiff has been damaged in an amount not less than $3,314,225.00.

51. In doing the acts alleged herein, Defendant's conduct was despicable and Defendant acted towards Plaintiff with malice, oppression, fraud, and with a willful and conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

## **FOURTH CAUSE OF ACTION**

**(Violation of California Business and Professions Code §§ 17200, et seq.)**

52. Plaintiff realleges, and by this reference incorporates herein, paragraphs 1 through 51 of this Complaint as though fully set forth.

53. Defendant's actions alleged herein are unlawful, unfair, and fraudulent business acts and/or practices, thereby constituting unfair competition under California Business & Professions Code §§ 17200, et. seq.

54. Plaintiff is informed and believes, and upon such information and belief, alleges that the practices alleged herein above are continuing.

55. As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, as alleged herein, Plaintiff has suffered injury in fact and losses as a result of Defendant's unfair competition.

56. Plaintiff is entitled to an order requiring Defendant to disgorge its gains and/or awarding Plaintiff restitution and restoration of everything wrongfully acquired by Defendant by means of its acts and/or practices of unfair competition. In addition, Plaintiff is entitled to an order imposing a trust upon Defendant's gains and/or monies which were acquired and/or obtained by means of unfair competition to avoid dissipation, fraudulent transfers, or concealment of such monies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For compensatory damages in an amount to be proved at trial;
2. For punitive damages, where legally available;
3. For restitution;
4. For pre-judgment interest;
5. For attorneys' fees and costs; and,
6. For any such other and further relief as the Court may deem just and proper.

DATED: March 7, 2019	**THOMPSON COBURN LLP**

By:     /s/ Helen B. Kim
    **HELEN B. KIM**
    Attorneys for Plaintiff
    FEDERICO POLAK

7261460

12

COMPLAINT

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 38-1, Plaintiff hereby demands trial by jury in this action on any issue triable of right by a jury.

DATED: March 7, 2019      **THOMPSON COBURN LLP**

By:    /s/ Helen B. Kim
**HELEN B. KIM**
Attorneys for Plaintiff
FEDERICO POLAK